# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVRAHAM GOLDSTEIN; MICHAEL GOLDSTEIN; FRIMETTE KASS-SHRAIBMAN; MITCHELL LANGBERT; JEFFREY LAX; MARIA PAGANO, | **Case No. 1:22-cv-321** |
| Plaintiffs, | (Hon. _____) |
| v. | |
| PROFESSIONAL STAFF CONGRESS/CUNY; CITY UNIVERSITY OF NEW YORK; JOHN WIRENIUS, in his official capacity as Chairperson of the New York Public Employee Relations Board; ROSEMARY A. TOWNLEY, in her official capacity as Member of the New York Public Employee Relations Board; ANTHONY ZUMBOLO, in his official capacity as Member of the New York Public Employee Relations Board; CITY OF NEW YORK; THOMAS P. DINAPOLI, in his official capacity as New York State Comptroller, | **COMPLAINT** |
| Defendants. | |

AND NOW come Plaintiffs Avraham Goldstein, Michael Goldstein, Frimette Kass-Shraibman, Mitchell Langbert, Jeffrey Lax, and Maria Pagano, by and through their undersigned attorneys, and state the following claims for relief against Defendants Professional Staff Congress/CUNY ("PSC"); the City University of New York ("CUNY"); John Wirenius, in his official capacity as Chairperson of the New York Public Employee Relations Board; Rosemary A. Townley, in her official capacity as Member of the New York Public Employee Relations Board; Anthony Zumbolo, in his official capacity as Member of the New York Public Employee Relations Board; the City of New York ("City"); and Thomas P. DiNapoli, in his official capacity as New York State Comptroller:

## SUMMARY OF THE CASE

1.      Plaintiffs are faculty of CUNY who strongly object to being exclusively represented by PSC and forced to associate with other employees within their assigned bargaining unit. They object to being forced to associate with PSC in any manner, to having PSC speak for them in any manner, and to providing support to PSC in any form.

2.      Plaintiffs have all chosen to resign their memberships in PSC due to their opposition to its representation of them, based largely on its ideological and political advocacy, which they abhor, as well as its representation of them in their employment.

3.      All but one of the plaintiffs are Jewish, and several of them resigned from PSC following its adoption in June 2021 of a "Resolution in Support of the Palestinian People" ("Resolution") that Plaintiffs view as anti-Semitic, anti-Jewish, and anti-Israel. Since the Resolution, PSC has continued to advocate positions and take actions that Plaintiffs believe to be anti-Semitic, anti-Jewish, and anti-Israel, in a manner that harms the Jewish plaintiffs and singles them out for opprobrium, hatred, and harassment based on their religious, ethnic, and/or moral beliefs and identity. Because of this, they have no faith and confidence in PSC's ability to represent them as their exclusive, fiduciary representative, and they desire to end such forced representation.

4.      Despite Plaintiffs' resignations from membership in PSC, Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, acting in concert and under color of state law, force all Plaintiffs to continue to utilize PSC as their exclusive bargaining representative. Thus, under color of state law, Plaintiffs are forced to remain part of a bargaining unit that is represented exclusively by PSC and are forced to associate with PSC and other employees within the bargaining unit.

5.      Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 for declaratory, injunctive, and monetary relief to redress and to prevent the ongoing deprivation of rights, privileges, and/or immunities under the First and Fourteenth Amendments to the United States

Constitution caused by state statutes and Defendants' contracts, policies, and practices that designate PSC as Plaintiffs' exclusive bargaining representative with their Employer, force Plaintiffs into a defined bargaining unit with others who do not share the same interests, and require some Plaintiffs to continue to financially subsidize PSC's speech even though they have resigned their membership in the union. PSC's designation as exclusive bargaining representative and Plaintiffs' mandatory inclusion in a bargaining unit violate Plaintiffs' speech, petitioning, and associational rights under the First Amendment.

## JURISDICTION AND VENUE

6.      This action arises under the Constitution of the United States of America and the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of Plaintiffs' rights, privileges, and immunities under the Constitution of the United States, particularly the First and Fourteenth Amendments thereto.

7.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, because their claims arise under the Constitution of the United States, and 28 U.S.C. § 1343, because Plaintiffs seek relief under 42 U.S.C. § 1983.

8.      This action is an actual controversy in which Plaintiffs seek declarations of their rights under the United States Constitution. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare plaintiffs' rights and grant further necessary and proper relief, including injunctive relief, pursuant to Federal Rule of Civil Procedure 65.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because one or more defendants are domiciled in and operate or do significant business in this judicial district. Additionally, many of Plaintiffs' injuries and a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

10.     Plaintiff Avraham Goldstein is a "public employee" within the meaning of the Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law, Article 14 (the "Taylor Law"), *see* N.Y. Civ. Serv. Law § 201.7 (McKinney 2020). He is employed full-time by CUNY as an assistant professor of math at Borough of Manhattan Community College. Professor Goldstein is represented by PSC exclusively for purposes of collective bargaining with CUNY. He was a member of PSC but has not been a member since the date of his resignation letter on August 2, 2021.

11.     Plaintiff Michael Goldstein is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. He is employed full-time by CUNY as a Higher Education Officer and Adjunct Professor. Professor Goldstein is represented by PSC exclusively for purposes of collective bargaining with CUNY. He was a member of PSC but has not been a member since the date of his resignation letter on June 22, 2021.

12.     Plaintiff Frimette Kass-Shraibman is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. She is employed full-time by CUNY as a professor of accounting at Brooklyn College. Professor Kass-Shraibman is represented by PSC exclusively for purposes of collective bargaining with CUNY. She was a member of PSC but has not been a member since the date of her resignation letter on September 17, 2021.

13.     Plaintiff Mitchell Langbert is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. He is employed full-time by CUNY as an associate professor of business at Brooklyn College. Professor Langbert is represented by PSC exclusively for purposes of collective bargaining with CUNY. He was a member of PSC but has not been a member since the date of his resignation letter on June 22, 2021.

14.     Plaintiff Jeffrey Lax is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. He is employed full-time by CUNY as a professor of business at

Kingsborough College. Professor Lax is represented by PSC exclusively for purposes of collective bargaining with CUNY. He was a member of PSC but has not been a member since the date of his resignation letter on June 17, 2021.

15.     Plaintiff Maria Pagano is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. She is employed full-time by CUNY as an associate professor at the New York City College of Technology. Professor Pagano is represented by PSC exclusively for purposes of collective bargaining with CUNY but was not a member of PSC at any time relevant to this Complaint.

16.     Defendant PSC is an "employee organization" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.5. PSC and its affiliates represent over 30,000 faculty and staff at CUNY and the CUNY Research Foundation, including both full-time and part-time employees. PSC represents Plaintiffs, and all those in their bargaining unit, exclusively for purposes of collective bargaining with CUNY. PSC maintains a place of business at 61 Broadway, 15th Floor New York, New York and conducts its business and operations in the Southern District of New York.

17.     Defendant CUNY is a "government" or "public employer" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.6. CUNY recognizes PSC as Plaintiffs' exclusive representative pursuant to the Taylor Law and pursuant to both its memorandum of understanding ("MOA") and collective bargaining agreement ("CBA") with PSC.

18.     Defendant John Wirenius is Chairperson of the New York Public Employee Relations Board ("PERB"). In a certification order issued in 1972, PERB defined the "instructional staff" bargaining unit that includes Plaintiffs and certified PSC as the exclusive representative for that unit of more than 30,000 CUNY instructional staff. Defendant Wirenius is sued in his official capacity.

19.     Defendant Rosemary A. Townley is a Member of PERB, which defined Plaintiffs'
bargaining unit and certified PSC as the exclusive representative for Plaintiffs' bargaining unit. She is
sued in her official capacity.

20.     Defendant Anthony Zumbolo is a Member of PERB, which defined Plaintiffs'
bargaining unit and certified PSC as the exclusive representative for Plaintiffs' bargaining unit. He is
sued in his official capacity.

21.     Defendant City of New York is a "government" or "public employer" within the
meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.6. The City issues wages to certain CUNY
employees, including Plaintiffs A. Goldstein, M. Goldstein, and Lax, and processes payroll
deductions of union dues and/or fees pursuant to the requirements of the CBA and the Taylor Law.

22.     Defendant Thomas P. DiNapoli, in his official capacity as the New York State
Comptroller, is responsible for, among other things, issuing wages to certain CUNY employees,
including to Plaintiffs Kass-Shraibman, Langbert, and Pagano. He oversees the payroll system for
the state, which includes processing payroll deductions, including union dues and/or fees deductions
pursuant to the requirements of the CBA and the Taylor Law. Mr. DiNapoli is sued in his official
capacity.

## FACTUAL ALLEGATIONS

**Plaintiffs Desire to End Association with PSC**

23.     Plaintiffs are all employed by CUNY within the instructional staff bargaining unit
that is exclusively represented by PSC and are all former members of PSC.

24.     Acting in concert under color of state law, CUNY and PSC have entered into the
MOA, CBA, and other agreements that control the terms and conditions of Plaintiffs' employment.
The CBA is attached hereto as "Exhibit A," and incorporated by reference herein. The MOA is
attached hereto as "Exhibit B," and incorporated by reference herein.

25.     PSC is Plaintiffs' exclusive representative under state law—PERB certified PSC as the exclusive representative for Plaintiffs' bargaining unit in 1972—and pursuant to Article 1 of the CBA between CUNY and PSC.

26.     PSC purports to represent over 30,000 employees, the majority of which, on information and belief, are included in Plaintiffs' bargaining unit.

27.     Plaintiffs have lost confidence in and become alienated from PSC due to its political advocacy and stated positions on Israel and involvement in international affairs, as well as the quality of PSC's representation, especially as to Plaintiffs, in the terms and conditions of their employment.

28.     Professor Avraham Goldstein is an observant Orthodox Jew. He was born in the former Soviet Union, where he and his family suffered from extreme anti-Semitic and anti-Jewish abuse at the hands of the Soviet authorities. Their request to leave the Soviet Union was denied for 15 years, until in 1986 the Soviet authorities permitted them to relocate to Israel. Professor Goldstein is a citizen of the State of Israel, he has friends and family residing there, and he is a supporter of that country based on his religious and moral beliefs. Professor Goldstein has felt marginalized and ostracized by PSC because the union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome. Since Zionism is an integral component of Professor Goldstein's Jewish identity, the impact of PSC's conduct has been to marginalize and ostracize him on the basis of his identity as a Jew. Professor Avraham Goldstein also believes that his employment, economic, and career interests as a full-time tenured faculty member often conflict with the interest of others in the bargaining unit, such as part-time adjunct faculty. He believes that his inclusion in a bargaining unit with these other groups, which greatly outnumber the full-time tenure-track faculty, infringes on his employment interests and that PSC's rules give some of these other groups more power to advance their interests, because of their size, at the expense of the interests of the full-time faculty.

29.     Professor Michael Goldstein is a Jew and an ardent Zionist. He bases his love of the State of Israel and his Zionism on his belief in God and the Jewish people. He has worked for CUNY for over 32 years, and, combined with his parents, has over 100 years of service to CUNY, including his father's service as Acting Chancellor of CUNY. Professor Goldstein has experienced anti-Semitic and anti-Zionist attacks from members of PSC, including what he sees as bullying, harassment, destruction of property, calls for him to be fired, organization of student attacks against him, and threats against him and his family. He now has a guard follow him everywhere he goes on campus. Professor Goldstein has felt marginalized and ostracized by PSC because the union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome. Since Zionism is an integral component of Professor Goldstein's Jewish identity, the impact of PSC's conduct has been to marginalize and ostracize him on the basis of his identity as a Jew. Professor Goldstein resigned from PSC because he believes PSC was behind the anti-Semitic and anti-Zionist attacks against him on campus. He believes that PSC does not represent Jewish and pro-Israel members of the bargaining unit and instead works to eliminate them from CUNY. He also believes PSC hurts some members of the bargaining unit economically, does not offer the same level of representation to Higher Education Officers ("HEOs"), and prioritizes the pay of part-time adjuncts and others over HEOs.

30.     Professor Kass-Shraibman is an Orthodox Jew and lifelong Zionist. She was born and still resides in Brooklyn, New York.  She and her family helped raise funds for Israel before and during its War of Independence in 1948 and during the Six-Day War in 1967. She hopes to emigrate to Israel after retiring from CUNY. She believes that the PSC's Resolution and other positions and activities support those who would destroy Israel and are antithetical to all she believes in. Furthermore, she believes that the PSC's positions considering support of the "Boycott, Divestment, and Sanctions" ("BDS") movement and the current Palestinian regime in the

achievement of its stated goals would bring death and destruction to her immediate and extended family living in Israel. Professor Kass-Shraibman has felt marginalized and ostracized by PSC because the union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome. Since Zionism is an integral component of Professor Kass-Shraibman's Jewish identity, the impact of PSC's conduct has been to marginalize and ostracize her on the basis of her identity as a Jew. Professor Kass-Shraibman also believes that she and her colleagues have been harmed economically by PSC's actions and inaction over the years. She believes that instead of negotiating contracts on behalf of the CUNY faculty as it should have, PSC frequently acted as a "social justice" agency instead of a labor union. For example she believes that, instead of prioritizing the pay of full-time faculty, PSC expended resources advocating on behalf of teachers in Peru, graduate students at various other universities and the so-called "Occupy Wall Street" movement.

31.     Professor Langbert is a business professor, a political libertarian, a Jew, and a Zionist. He has long been opposed to PSC's political and ideological activities and causes. He has published op-eds and other writings that questioned the political activities of PSC and its leadership. Professor Langbert has also filed complaints concerning the failure of PSC to adequately represent business faculty, failure to represent the views of dues payers who do not agree with the leadership's political speech and activities, and failure to represent Jews like him who support Zionism and the State of Israel. Professor Langbert has felt marginalized and ostracized by PSC because he believes that the union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome. Since Zionism is an integral component of Professor Langbert's Jewish identity, the impact of PSC's conduct has been to marginalize and ostracize him on the basis of his identity as a Jew.

32.     Professor Lax is an observant Orthodox Jew who supports the State of Israel and believes in biblically-based Zionism, as described in the book of Genesis. Professor Lax resigned

from PSC after 17 years of membership on June 17, 2021, due to EEOC-substantiated claims that PSC discriminated against him on his campus because he was a Zionist and observant Jew, and because of PSC's failure to represent its Zionist members, as shown by the Resolution and similar actions. In a separate case brought by Professor Lax, the EEOC issued a letter of determination that CUNY and PSC leaders discriminated against him, retaliated against him, and subjected him to a hostile work environment on the basis of religion. PSC members failed to accommodate Professor Lax by holding at least one event on a Friday night, the Jewish Sabbath, so he could not attend. The EEOC also substantiated that PSC leaders excluded Professor Lax and other observant or Zionist Jews from a powerful faculty group called the Progressive Faculty Caucus. Professor Lax has felt marginalized and ostracized by PSC because the union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome. Since Zionism is an integral component of Professor Lax's Jewish identity, the impact of PSC's conduct has been to marginalize and ostracize him on the basis of his identity as a Jew.

33. Professor Pagano resigned from PSC in approximately 2010, after PSC attempted to interfere with the settlement of a grievance her retained attorney had negotiated with CUNY, after PSC had refused to handle that grievance. She has often disagreed with positions PSC has taken in contract negotiations, where it acts as her mandatory exclusive representative. She opposes PSC's failure to negotiate adequate raises for the faculty, and its adoption of compulsory contributions for paid family leave insurance that she does not desire and would not purchase on her own. In recent years, Professor Pagano has become increasingly concerned over PSC's political radicalization, culminating in the adoption of the Resolution and PSC's continued defense of its involvement in

political activities following the Resolution. She would consider choosing another union if she was not forced to associate with PSC.

34.     Plaintiffs' opposition to PSC's political and ideological positions crystalized in June 2021, when PSC adopted the Resolution regarding what it termed "the continued subjection of Palestinians to the state-supported displacement, occupation, and use of lethal force by Israel," and requiring chapter-level discussion of possible support by PSC for the BDS movement. The Resolution is attached hereto as "Exhibit C" and is incorporated by reference herein.

35.     Plaintiffs believe that this Resolution is openly anti-Semitic and anti-Israel, as it attacks and applies a double standard to the one Jewish nation in the world, Israel, while ignoring every other nation.

36.     In protest of PSC's anti-Semitic and anti-Israel statements, actions, and positions, particularly the Resolution, Plaintiffs A. Goldstein, M. Goldstein, Kass-Shraibman, Langbert, and Lax resigned their memberships in PSC after the adoption of the Resolution.

37.     Plaintiffs' resignations, through correspondence sent to Defendants PSC, CUNY, the City, and/or DiNapoli, ended their memberships in PSC and revoked the authorization for the continued deduction of union dues from their wages.

38.     Despite their resignations and revocations of authorization, dues deductions continued from the wages of Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert.

39.     Plaintiff Pagano had already ended her membership in PSC years before PSC adopted the Resolution, and she signed a resolution opposing PSC's Resolution.

40.     On information and belief, over 260 members of PSC have resigned and revoked their authorizations for dues deductions since PSC adopted the Resolution.

41.     In the months since the Resolution, PSC members have held chapter-level discussions, as required by the Resolution. These discussions encourage support for the anti-Semitic

and anti-Israel BDS movement among rank-and-file members of PSC, who are Plaintiffs' colleagues, as well as PSC officials. By ensuring that the Resolution and the BDS movement's goals would be discussed over and over again at chapter meetings across the CUNY campuses, PSC ensured that the isolation, marginalization, harassment, and ridicule experienced by the pro-Israel Zionist faculty would continue throughout the academic year.

42.     Plaintiffs strongly oppose the political positions and speech of PSC, including the positions espoused in the Resolution, and do not want to be associated with, represented by, or linked to PSC in any way.

43.     The Jewish Plaintiffs believe the Resolution, and related conduct by PSC, sets them and their co-religionists apart and singles them out for disparate treatment, opprobrium, and hostility, based solely upon their religious, ethnic, and moral beliefs and identity, including their support for Israel, the nation-state of the Jewish people. Due to PSC's expressed anti-Semitism and anti-Zionism, none of the Plaintiffs believe PSC can serve as a fiduciary to represent them fairly in negotiating their terms and conditions of employment, or in any interactions with their Employer.

44.     All Plaintiffs believe, based on past experiences they have had with PSC's poor representation of them or refusal to represent them, along with their opposition to PSC's positions and speech, that PSC could not and would not fairly represent them in grievances, disciplinary matters, or other interactions with their Employer.

45.     Plaintiffs oppose the ways in which PSC spends members' dues money, including, among other things, its support for a political party known as the Working Families Party.

46.     Plaintiffs also oppose the ways in which PSC represents them in the negotiation of their terms and conditions of employment. Among other things, Plaintiffs believe that PSC prioritizes the economic and employment interests of part-time adjunct professors and other groups in the bargaining unit over their interests as full-time faculty and/or staff of CUNY. For example,

PSC has prioritized securing health insurance for part-time adjuncts over higher raises for full-time faculty. Plaintiffs believe that PSC cannot and does not fairly represent the wide variety of positions and large numbers of employees who are forced to associate within their bargaining unit. In fact, PSC's representation policies and practices are performed to the detriment of Plaintiffs.

**Plaintiffs Cannot End Association with PSC or the Bargaining Unit**

47.     Although Plaintiffs have resigned from PSC and want to have no connection with it, they are forced by the Taylor Law, CBA, and MOA to accept and associate with PSC as their exclusive representative with CUNY.

48.     Although Plaintiffs' interests in the terms and conditions of their employment diverge from the interests of others in their bargaining unit, they are still forced to be in the bargaining unit and to associate with PSC and tens of thousands of other instructional staff of CUNY in the unit who do not share their same economic interests, and who also do not share their beliefs or are overtly hostile to them.

49.     Under New York law, a union may become public employees' exclusive representative for collective bargaining purposes by recognition or certification. A union so designated has exclusive legal authority to speak for all employees in the bargaining unit, irrespective of whether each individual employee agrees to or desires such exclusive representation. N.Y. Civ. Serv. Law § 204.

50.     When a union has been certified or recognized as the exclusive representative, the public employer is required by law to negotiate only with that union regarding the terms and conditions of employment for the public employees the union exclusively represents. N.Y. Civ. Serv. Law § 204.2. This requirement on the public employer includes a "mutual obligation" to meet at reasonable times and confer in good faith. N.Y. Civ. Serv. Law § 204.3.

51.     The Taylor Law requires that "[a] public employer shall extend to an employee

organization certified or recognized pursuant to this article the following rights: . . . (b) to

membership dues deduction, upon presentation of dues deduction authorization cards signed by

individual employees. . . ." N.Y. Civ. Serv. Law § 208.1.

52.     The Taylor Law also provides that "[t]he right to such membership dues deduction

shall remain in full force and effect until: (i) an individual employee revokes membership in the

employee organization in writing in accordance with the terms of the signed authorization." N.Y.

Civ. Serv. Law § 208.1.

53.     The Taylor Law also limits the duties an exclusive representative owes to any

employees in its bargaining unit who choose not to be union members. The Taylor Law authorizes

PSC, Plaintiffs' exclusive representative, to treat Plaintiffs less favorably than PSC members, solely

because they have exercised their constitutional rights to become or remain nonmembers.

54.     Specifically, the Taylor Law provides that "[n]otwithstanding any law, rule or

regulation to the contrary, an employee organization's duty of fair representation to a public

employee it represents but who is not a member of the employee organization shall be limited to the

negotiation or enforcement of the terms of an agreement with the public employer." N.Y. Civ. Serv.

Law § 209-a(2).

55.     In addition, the Taylor Law specifically provides,

No provision of this article shall be construed to require an employee organization to
provide representation to a non-member:

(i) during questioning by the employer,
(ii) in statutory or administrative proceedings or to enforce statutory or
regulatory rights, or
(iii) in any stage of a grievance, arbitration or other contractual process
concerning the evaluation or discipline of a public employee where the non-
member is permitted to proceed without the employee organization and be
represented by his or her own advocate.

N.Y. Civ. Serv. Law § 209-a(2).

56.     Finally, the Taylor Law also provides: "Nor shall any provision of this article prohibit an employee organization from providing legal, economic or job-related services or benefits beyond those provided in the agreement with a public employer only to its members." N.Y. Civ. Serv. Law § 209-a(2).

57.     PSC was certified by the New York State Public Employment Relations Board on June 16, 1972, to represent the "instructional staff" of CUNY.

58.     Pursuant to state law, the certification order, the CBA, and the MOA, the CUNY instructional staff, including Plaintiffs, are forced to be included in the instructional staff bargaining unit and be exclusively represented by PSC.

59.     Article 4 of the CBA grants certain rights to PSC, including "exclusive check-off of annual PSC dues." Ex. A, art. 4.1.

60.     Due to its status as exclusive representative for the instructional staff bargaining unit, PSC represents 30,000 CUNY employees, which it touts on its website. PSC represents these employees regardless of whether the employees are union members and regardless of whether these employees agree with PSC's speech and its positions.

61.     No Plaintiff has ever participated in a vote to certify or recognize PSC as his or her exclusive representative.

62.     Pursuant to state law, the duty of fair representation that PSC owes to Plaintiffs and other nonmembers is limited to "the negotiation or enforcement of the terms of an agreement with the public employer," and PSC has no duty to represent Plaintiffs in any of the situations designated in Section 209-a of the Taylor Law. *See also* paragraphs 53–56.

63.     Plaintiffs believe that PSC does not and cannot represent their interests, beliefs, or needs related to the terms and conditions of their employment or in interactions with their Employer.

64.     Plaintiffs' forced inclusion in their bargaining unit does a disservice to them and causes them to be disadvantaged in their terms and conditions of employment and in their relations with their fellow employees and the general public.

65.     Plaintiffs object to being forced into a bargaining unit with other CUNY employees whose interests in terms and conditions of employment differ from their own.

66.     Plaintiffs strongly disagree with PSC on many issues, including those related to the terms and conditions of employment and to PSC's political positions, advocacy, and public speech.

67.     Plaintiffs believe that PSC's actions, including the Resolution, subject the Jewish Plaintiffs to hostility in the workplace and in the general public, and single them out for opprobrium, discrimination, and hatred based upon their religious, ethnic, and/or moral beliefs and identity.

68.     Due to PSC's status as Plaintiffs' exclusive representative, Plaintiffs have no ability to represent themselves in connection with their terms and conditions of employment with their Employer or to associate with a different collective bargaining representative of their choosing. Under New York law, Plaintiffs are forced to accept PSC's representation even though they vehemently disagree with its speech, actions, and positions in negotiations and elsewhere.

69.     PSC's statutory entitlement to speak and bargain exclusively with CUNY as Plaintiffs' sole and mandatory representative deprives Plaintiffs of their ability to speak and bargain with CUNY regarding their terms and conditions of employment, both individually and through other associations they might choose.

70.     Plaintiffs do not want to be associated with PSC in any way, including having PSC as their exclusive representative or through forced financial support of PSC or its affiliates.

71.     Plaintiffs do not want to be associated with all members of their bargaining unit.

**Certain Plaintiffs Cannot End Financial Support of PSC**

72.     Pursuant to the CBA, the MOA, state law, and/or other agreements between Defendants, the City of New York, through its Office of Payroll Administration ("OPA"), oversees or oversaw the deduction of union dues and/or fees from Plaintiff A. Goldstein for PSC, and transmits or transmitted them to PSC.

73.     Pursuant to the CBA, the MOA, state law, and/or other agreements between Defendants, Defendant DiNapoli oversees or oversaw the deduction of union dues and/or fees from Plaintiffs Kass-Shraibman and Langbert for PSC and transmits or transmitted them to PSC.

74.     The City of New York and Defendant DiNapoli have denied requests of Plaintiffs and other CUNY employees to end union dues deductions from their wages unless authorized by PSC.

75.     After Plaintiff A. Goldstein resigned his union membership, the City continued to deduct union dues from his wages.

76.     After Plaintiffs Kass-Shraibman and Langbert resigned their union memberships, Defendant DiNapoli continued to deduct union dues from their wages.

77.     Since the resignations of Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert, the City and Defendant DiNapoli transmitted and/or continues to transmit union dues deducted from their wages to PSC.

78.     Since the resignations of Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert, PSC has continued to accept union dues deducted from their wages.

79.     Acting in concert under color of state law, Defendants PSC and the City or DiNapoli have taken and continue to take and/or have accepted and continue to accept union dues from

certain Plaintiffs' wages as a condition of employment pursuant to state law, the CBA, the MOA, and other agreements between them, and/or their joint policies and practices.

80.     Defendants PSC and the City or DiNapoli have taken and continue to take and have accepted and continue to accept union dues from Plaintiffs' wages even though the seizure of union dues from their wages was and is against Plaintiffs' wills and without their consent.

81.     Plaintiffs object to being forced to fund PSC, including any of its speech and activities, for any purpose.

## CLAIMS FOR RELIEF

### COUNT ONE
**Compelled Association with Exclusive Representative**
(Violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments
to the United States Constitution)

82.     Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     The First Amendment protects "[t]he right to eschew association for expressive purposes," *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463 (2018), because the "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

84.     "[M]andatory associations are permissible only when they serve a 'compelling state interes[t] . . . that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 310 (2012) (alterations in original) (quoting *Roberts*, 468 U.S. at 623).

85.     In the context of public-sector unions, the Supreme Court has recognized that "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees

18

negotiate directly with their employer." *Janus*, 138 S. Ct. at 2460. Indeed, such compelled union representation "extinguishes the individual employee's power to order his own relations with his employer." *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967).

86.     The duty of fair representation "is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit." *Janus*, 138 S. Ct. at 2469.

87.     PSC's status as exclusive representative compels Plaintiffs to associate with PSC, and to therefore be associated with PSC's speech and PSC positions with which Plaintiffs vehemently disagree and that they believe to be anti-Semitic and anti-Israel.

88.     PSC's status as exclusive representative compels Plaintiffs to speak and to petition the government because it authorizes PSC to speak for Plaintiffs and to petition the government for Plaintiffs.

89.     PSC's status as exclusive representative attributes PSC's speech and petitioning to Plaintiffs.

90.     PSC's status as exclusive representative diminishes Plaintiffs' own speech and petitioning.

91.     PSC's status as exclusive representative restricts Plaintiffs' ability to associate, or not to associate, with a labor organization and with other members of the bargaining unit.

92.     PSC's status as exclusive representative carries with it only a limited duty to fairly represent Plaintiffs and other nonmembers under the Taylor Law, which exacerbates the associational and other harms Plaintiffs suffer as a result of being compelled to accept PSC as their exclusive representative.

93.     Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, by compelling Plaintiffs to accept PSC as their exclusive representative, have deprived and are depriving Plaintiffs of their

First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

94.     Section 204 of the Taylor Law and the CBA are unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States to the extent they authorize and empower PSC to act as Plaintiffs' exclusive representative.

95.     Section 204 of the Taylor Law's provision of exclusive representation is unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States because Section 209-a of the Taylor Law limits the duty of fair representation that PSC owes to Plaintiffs.

96.     As a direct result of the concerted actions of Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, taken pursuant to state law, the certification order, CBA, MOA, and/or other agreements between Defendants, and their joint policies and practices, Plaintiffs are suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

97.     If not enjoined by this Court, Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo and/or their agents will continue to effect the aforementioned deprivations and abridgments of Plaintiffs' constitutional rights, thereby causing them to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT TWO
### Compelled Association with Bargaining Unit
(Violation of 42 U.S.C. § 1983 and the First and
Fourteenth Amendments to the United States Constitution)

98.     Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     Under New York law, and specifically Section 204 of the Taylor Law, PERB, through Defendants Wirenius, Townley, and Zumbolo, and/or their predecessors, issued the

certification order that defined the "instructional staff" bargaining unit at CUNY and designated PSC as the exclusive representative for that unit.

100.    Because Plaintiffs' positions are defined as "instructional staff" under the certification order and the CBA and/or MOA, it is a term and condition of employment for Plaintiffs that they must be in the bargaining unit with tens of thousands of other CUNY employees, regardless of whether they desire to be included or whether they have shared economic, political, or employment interests with other employees in the unit.

101.    Because Plaintiffs' positions are defined as "instructional staff" under the certification order and the CBA and/or MOA, as required by the Taylor Law, only PSC may negotiate with CUNY regarding the terms and conditions of Plaintiffs' employment.

102.    PSC's status as exclusive representative of Plaintiffs' bargaining unit compels Plaintiffs to associate with other employees within the bargaining unit and restricts their ability not to associate with other employees in the bargaining unit.

103.    Plaintiffs oppose being forced to associate with other employees within the bargaining unit who do not share their political views and who espouse views Plaintiffs believe to be anti-Semitic or anti-Israel.

104.    Plaintiffs also oppose being forced into the same bargaining unit with CUNY instructional staff, such as part-time adjuncts, whose employment interests diverge from their own.

105.    Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, by compelling Plaintiffs to associate with employees in the bargaining unit whose views they oppose and whose interests are not aligned with Plaintiffs, have deprived and are depriving Plaintiffs of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

106.     As a direct result of the concerted actions of Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, taken pursuant to state law, the CBA, MOA, the certification order, and/or other agreements between Defendants, and their joint policies and practices, Plaintiffs are suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

107.     If not enjoined by this Court, Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo and/or their agents will continue to effect the aforementioned deprivations and abridgments of Plaintiffs' constitutional rights, thereby causing them to suffer irreparable harm for which there is no adequate remedy at law.

**COUNT THREE**
**Compelled Financial Support of Union Speech**
by Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert
(Violation of 42 U.S.C. § 1983 and the First and
Fourteenth Amendments to the United States Constitution)

108.     Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

109.     The United States Supreme Court held that the First Amendment to the Constitution of the United States prohibits the government and unions from compelling public employees to pay dues or fees to a union as a condition of employment. *See Janus*, 138 S. Ct. at 2486.

110.     The First Amendment requires that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Janus*, 138 S. Ct. at 2486.

111.     There is no state interest, compelling or otherwise, justifying the state's requirement that individuals remain members of or provide financial support to a private organization, including a labor organization, for any length of time.

112.     Sections 201 and 208 of the Taylor Law authorize Defendants to compel employees to continue to financially support a union even after they provide notice that they resigned their union membership and want to end financial support of the union.

113.     Defendants PSC and the City or DiNapoli compelled these Plaintiffs to financially support PSC and its speech, as nonmembers and over their objections, by seizing payments for PSC from these Plaintiffs' wages after they provided notice that they resigned their membership in PSC and did not consent to union dues deductions.

114.     Defendants PSC and the City or DiNapoli, by compelling these Plaintiffs to financially support PSC and its speech as nonmembers and over their objections, deprived these Plaintiffs of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

115.     At no time did Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert waive their First Amendment right to refrain from financially supporting PSC and its speech. A valid waiver of constitutional rights requires clear and compelling evidence that a putative waiver was voluntary, knowing, and intelligent and that enforcement of the waiver is not against public policy. Defendants cannot prove, by clear and compelling evidence, that these Plaintiffs voluntarily, knowingly, and intelligently waived their First Amendment right or that enforcement of any such waiver is consistent with public policy.

116.     Sections 201 and 208 of the Taylor Law are unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States to the extent they authorize Defendants PSC and the City or DiNapoli to compel public employees to continue to financially support PSC and its speech over their objections and after they resigned their union membership.

117.     As a direct result of the concerted actions of Defendants PSC, the City, and/or DiNapoli, taken pursuant to state law, the CBA, MOA, and/or other agreements between

Defendants, and their joint policies and practices, these Plaintiffs are in imminent danger of suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

118.     If not enjoined by this Court, Defendants and/or their agents and officials will continue to effect the deprivations and abridgments of these Plaintiffs' constitutional rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court order the following relief:

A.      **Declaratory:** A judgment based upon the actual, current, and *bona fide* controversy between the parties as to the legal relations among them, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, declaring that:

i.      the certification and recognition of PSC as Plaintiffs' exclusive representative by Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo, pursuant to the Taylor Law, CBA, and MOA violate Plaintiffs' First Amendment rights of free speech and free association and are unconstitutional;

ii.      Defendants PSC, CUNY, Wirenius, Townley, and Zumbolo violate Plaintiffs' First Amendment rights of free speech and free association by compelling them to associate with other employees in the bargaining unit for purposes of speech and expressive activities;

iii.      Section 204 of the Taylor Law is unconstitutional under the First Amendment to the United States Constitution to the extent that it requires or authorizes PSC to be Plaintiffs' exclusive representative and compels Plaintiffs to associate with other employees in the bargaining unit for purposes of speech and expressive activities; and

iv.      any taking of union dues from any Plaintiffs after their resignation of membership in PSC violates those Plaintiffs' rights under the First and Fourteenth

Amendments of the United States Constitution, and that any provisions of the Taylor Law, the CBA and/or MOA, other agreements between Defendants, and/or any other purported authorizations that allow or require such deductions of union dues from Plaintiffs' wages are unconstitutional.

B.      **Injunctive:** A permanent injunction enjoining Defendants, their officers, employees, agents, attorneys, and all others acting in concert with them, from:

   i.      engaging in any of the activities listed in Part A above that the Court declares illegal;

   ii.      certifying or recognizing PSC, or any other union, as Plaintiffs' exclusive representative without their consent; and

   iii.      enforcing any provisions in the Taylor Law, the CBA or MOA, other agreements between Defendants, and/or Defendants' policies and practices that require Plaintiffs to provide financial support to PSC.

C.      **Monetary:** A judgment against Defendants PSC, CUNY, and the City, awarding Plaintiffs nominal and compensatory damages, including but not limited to the dues seized from the wages of Plaintiffs A. Goldstein, Kass-Shraibman, and Langbert after they resigned their membership in PSC and revoked their dues deduction authorizations, for the injuries sustained as a result of Defendants' unlawful interference with and deprivation of their constitutional and civil rights, plus interest thereon, and such amounts as principles of justice and compensation warrant.

D.      **Attorneys' Fees and Costs:** A judgment awarding Plaintiffs their costs and reasonable attorneys' fees under 42 U.S.C. § 1988.

E.      **Other:** Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 12, 2022

**s/ Nathan J. McGrath**

Nathan J. McGrath*
Email: njmcgrath@fairnesscenter.org
Danielle R. Acker Susanj*
Email: drasusanj@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

Milton L. Chappell*
Email: mlc@nrtw.org
William L. Messenger*
Email: wlm@nrtw.org
c/o National Right to Work Legal
 Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Telephone: 703.321.8510
Facsimile: 703.321.9319

*Attorneys for Plaintiffs*

*motions for admission *pro hac vice* to be filed