UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AVRAHAM GOLDSTEIN,

                          Plaintiff,

-v-

PROFESSIONAL STAFF CONGRESS/CUNY,

                          Defendant.

22 Civ. 321 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for attorneys' fees and costs filed by plaintiff Avraham Goldstein ("Goldstein"). It follows the resolution—via an offer of judgment from the City under Federal Rule of Civil Procedure 68 ("Rule 68")—of Goldstein's claim against the City for improper union dues deductions. *See* Dkts. 67, 77–78. The Court has dismissed Goldstein's other claims in this case, which had been based principally on the First Amendment. For the reasons that follow, the Court grants Goldstein's fee application, but with substantial reductions, which reduce the fee award to $1,048.50, plus costs.

## I. Background

Goldstein and five fellow professors at the City University of New York ("CUNY") brought First Amendment challenges to their compulsory inclusion in a bargaining group and consequent representation by a union whose political advocacy they claimed to abhor. *See* Dkt. 1 ("Complaint") ¶¶ 2, 3, 27–35. Defendants included the professors' union—the Professional Staff Congress/CUNY (the "PSC"), the professors' employer CUNY, and the City of New York (the "City"). Count One challenged the professors' compelled association with the PSC. *See id.* ¶¶ 82–97. Count Two challenged the professors' compelled association with other faculty and

staff in a bargaining unit. *See id.* ¶¶ 98–107. And Count Three, brought against the PSC and the City, challenged the compelled financial support of the PSC of certain plaintiffs, including Goldstein, insofar as they alleged that deductions to support the PSC continued to be made from their paychecks covering the period after they had resigned from the PSC. *See id.* ¶¶ 108–18.

Defendants moved to dismiss Counts One and Two, and to dismiss portions of Count Three. *See* Dkts. 55, 58, 60. The Court ruled in favor of all defendants, dismissing Counts One and Two as precluded by settled Supreme Court precedent, and denying as moot the motions to dismiss Count Three, given concessions by the parties during the briefing of the motion to dismiss that narrowed the scope of that count. *See* Dkt. 95 (the "Opinion"). The case then proceeded to discovery on the surviving portion of Count Three, which was limited to the unresolved claims against the PSC and the City by some plaintiffs, who alleged unlawful post-resignation deductions of dues and interest. *See id.*

Relevant here, as to movant Goldstein, on June 14, 2022, before the Court ruled on the motions to dismiss, Goldstein filed a notice reflecting that he had accepted an offer of judgment as to his claim under Count Three, relating to improper dues deductions after he had resigned from the union. *See* Dkts. 67, 77–78. This judgment was in the amount of $223.35, "plus reasonable attorneys' fees, expenses, [and] costs in an amount to be determined by the Court." Dkts. 77–78. Such resolved Goldstein's only claim against the City.

On November 17, 2022, before the Court ruled on the motions to dismiss, Goldstein moved for an award of attorneys' fees and costs. Dkt. 84. On November 30, 2022, after the Court issued its Opinion resolving the motions to dismiss, the Court denied without prejudice Goldstein's motion for fees. Dkt. 96. The Court explained that because discovery was ongoing under Count Three for some plaintiffs, it would "not entertain fees motions piecemeal, but will

do so only after all claims have been resolved." *Id.* On February 14, 2023, the parties filed a joint motion to voluntarily dismiss the remaining portion of Count Three, Dkt. 109, which the Court so-ordered the same day, Dkt. 110. On March 14, 2023, the parties filed a proposed final judgment, Dkt. 111, which the Court entered the same day, Dkt. 112. On March 16, 2023, plaintiffs filed an appeal in the United States Court of Appeals for the Second Circuit (the "Second Circuit") as to the Court's dismissal of Counts One and Two. Dkt. 113.[1]

On March 28, 2023, Goldstein renewed his motions for attorneys' fees and costs pursuant to his offer of judgment against the City. He sought an award of fees and costs in the amount of $36,546.75. Dkt. 115 ("Mem."); *see* Dkts. 114, 116–23. On April 25, 2023, the City opposed the motion, arguing for an adjusted total of fees and costs of $3,364.86. Dkt. 132 ("Opp."). On May 9, 2023, Goldstein replied, seeking a revised total of $26,181.75, after conceding various arguments for reductions made by the City. Dkt. 133 ("Reply"). On June 20, 2023, the Court ordered the City to file a supplemental chart explaining its proposed calculations. Dkt. 134. On June 21, 2023, the City filed a supplemental chart. Dkt. 135.

## II. Discussion

Goldstein seeks fees for the work of the Fairness Center and attorneys from the National Right to Work Legal Defense & Education Foundation, Inc., which together represented him (and the other five plaintiffs) in this matter. Mem. at 1–2. Under the City's offer of judgment, Goldstein is entitled to an award of "reasonable attorneys' fees, expenses, and costs," Dkts. 77–78, and the City does not dispute that Goldstein is entitled to such an award. However, the City disputes the award's amount, on several grounds. The Court addresses the arguments in turn.

---

[1] As of the issuance of this Opinion, the appeal remains pending in the Second Circuit.

3

> litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 190 (emphasis in original); *see Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) ("The district court also may consider other factors identified in [*Johnson*], though it should note that many of these factors usually *are subsumed* within the initial calculation of hours reasonably expended at a *reasonable* hourly rate." (emphasis added) (internal citation omitted)); *see also Lilly v. City of New York*, 934 F.3d 222, 228–30 (2d Cir. 2019). "A district court has considerable discretion in determining what constitutes a reasonable fee award." *Ahmed v. City of New York*, No. 17 Civ. 3044 (SHS), 2020 WL 6487521, at *3 (S.D.N.Y. Nov. 4, 2020) (internal quotation marks omitted); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).

The Court here first calculates the lodestar. Goldstein seeks $24,820 in fees,[3] incurred over the duration of this litigation, based on the work of four attorneys—Nathan J. McGrath ("McGrath"), Milton L. Chappell ("Chappell"), William L. Messenger ("Messenger"), and Danielle Acker Susanj ("Susanj")—and one paralegal, Lindsey Wanner ("Wanner").

---

[3] This figure reflects several concessions by Goldstein, during briefing of this motion, that reduced his initial ask. These are: a 10% overall reduction "to further account for any duplicative work, as well as the presence of multiple claims and multiple plaintiffs in this litigation," Mem. at 11; reductions in the hourly rates for two attorneys for travel time, Reply at 12–13; a reduction for all time entries covering the period after April 22, 2022, pursuant to the terms of the offer of judgment, *id.*; and reductions for the claimed billable hours relating to work on *pro hac vice* motions, *id.* These deductions were warranted. The Court has adopted them in calculating the lodestar.

## A.    The Amount of the Reasonable Fee Award

A presumptively reasonable fee is calculated by using the "lodestar" method, under which the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

"In determining the amount of the reasonable fee award, the district court is to broadly consider case-specific variables, mindful of the idiosyncratic quality and path many litigations take." *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 588 (S.D.N.Y. 2021). The Second Circuit has clarified the relationship between the lodestar method and a widely used multifactor test (the "*Johnson* test") that some courts had treated as an alternative mode of calculation. *See Arbor Hill*, 522 F.3d at 188–91 (recapping history of award-calculation methodology). The Circuit concluded:

> We think the better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[2]; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to

---

[2] The *Johnson* factors were developed by the Fifth Circuit, which directed lower courts to consider 12 factors in setting a reasonable fee. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). These are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

4

The City disputes the propriety of the billing rates Goldstein claims for McGrath and Susanj.[4] For McGrath, plaintiff seeks $500/hour; the City counters with $400/hour. For Susanj, plaintiff seeks $400/hour; the City counters with $300/hour.

As to McGrath, he served as lead attorney in this litigation. Dkt. 116 ("McGrath Decl.") ¶ 1. He has been practicing law since 2010 and is president and general counsel of the Fairness Center. *Id.* ¶ 4. Since 2012, he has practiced trial and appellate civil litigation exclusively in the areas of labor, constitutional, civil rights, and administrative law. *Id.* ¶ 5. From September 2016 to present, he has worked at the Fairness Center, representing members of public-sector unions. *Id.* ¶ 4. He graduated from the Regent University School of Law in May 2010, *id.* ¶ 2, and is admitted to practice in New York and Pennsylvania, as well as in numerous districts, circuits, and the Supreme Court, *id.* ¶ 3.

The City terms McGrath's requested hourly rate of $500 "exorbitant" and "well above the prevailing rate for civil rights attorneys in the Southern District of New York." Opp. at 10. Although Goldstein rightly notes that the City largely relies on older case authority in addressing prevailing rates in the District, *see, e.g., Charles v. City of New York*, No. 13 Civ. 3547 (PAE), 2014 WL 4384155 (S.D.N.Y. Sept. 4, 2014); *Spencer v. City of New York*, No. 06 Civ. 2852 (KMW), 2013 WL 6008240 (S.D.N.Y. Nov. 13, 2013), an hourly rate of $500 for legal work as simple as that required to litigate Goldstein's claims under Count Three *is* excessive. "Precedent in the Southern District of New Yok demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to $650." *Bloise-Freyre v. City of New York*, No. 17 Civ. 2413

---

[4] For the other three, the Court agrees with defendant that the rates Goldstein proposes are reasonable based on their litigation experience, legal training, and education, and within the band of prevailing market rates. *See Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d. Cir. 2006). Thus, Messenger's hourly rate is $600; Chappell's is $650; and Wanner's is $150.

6

(PAE), 2018 WL 6075065, at *3 (S.D.N.Y. Nov. 20, 2018) (internal quotation omitted). "This instant matter does not qualify as 'unusually difficult or complex'" so as to justify an hourly rate on the higher end. *Dancy v. McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. 2015); *id.* at 239 (awarding $450 hourly rate to attorney with 36 years of experience as a civil rights lawyer in matter with "relatively uncomplicated nature"); *see Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (affirming a reduction in attorneys' fees for excessive billing in an uncomplicated case); *Hindman LLC v. Mihaly*, No. 21 Misc. 452 (PAE), 2022 WL 19752, at *3 (S.D.N.Y. Jan. 3, 2022) (substantially reducing attorneys' hourly rates because case "did not require complex legal research or delving into the record of the case"); *see also Smith v. City of New York*, No. 19 Civ. 6198 (KAM) (VMS), 2022 WL 939711, at *5 (E.D.N.Y. Mar. 28, 2022) (awarding $350 hourly rate to attorney with more than 23 years of experience in civil rights matter "involving relatively straightforward claims and uncomplicated facts"). An award here of $400 per hour is in line with the two cases (both out-of-district) brought to the Court's attention in which McGrath was awarded fees, and even accounts for an increase consistent with the rising tide of billing rates. *See Lum v. SEIU Loc. 521*, No. 14 Civ. 5230, ECF No. 77 (Cal. N.D. June 30, 2016) (awarding McGrath $375 an hour); *Kennedy v. Serv. Emps. Int'l Union, Loc. 99*, No. 14 Civ. 7855-AB (SSX), 2016 WL 5921068 (C.D. Cal. Feb. 23, 2016) (awarding McGrath $275 an hour in settled case). The Court thus finds a rate of $400 per hour appropriate for McGrath's work.

As to Susanj, she, with McGrath, had "the primary responsibility for this matter." Dkt. 117 ("Susanj Decl.") ¶ 9. She has more than nine years of litigation experience and has worked since 2018 for the Fairness Center, *id.* ¶¶ 4–5, where she is currently vice president and senior litigation counsel. *Id.* ¶ 4. She was previously a federal appellate judicial clerk and a litigation

7

at 1–2. It provided that the offer of judgment "shall be in full satisfaction of all federal and state law claims or rights that . . . Goldstein may have to damages, or any other form of relief, arising out of the alleged acts or omissions of [the City], in connection with the facts and circumstances that are the subject of the [C]omplaint in this action." *Id.* at 2. Critically, Goldstein accepted an offer of judgment against only the *City*, not against other defendants. And the City was not a named defendant on Counts One and Two, as the parties confirmed by the parties at argument. *See* Opinion at 2 n.1. Thus, although Goldstein obtained success via the offer of judgment on the one count he brought against this City, the offer of judgment did not afford him any success on the other two claims. Quite the contrary from achieving success on those claims, Goldstein (and the other plaintiffs) were emphatically and entirely vanquished on Counts One and Two, which the Court dismissed on the pleadings based on controlling First Amendment case law.

"Although full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined, the court retains substantial discretion to take into account the specific procedural history and facts of each case." *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). The Court exercises that discretion here, based on its recognition that Counts One and Two, which sought to vindicate asserted First Amendment rights, were the heart of this lawsuit, and that Count Three constituted a tiny sliver of this case. Measured against Counts One and Two, Count Three was a trifle—litigated, as Goldstein himself put the point, "as a matter of principle," Reply at 13, and requiring little legal skill to litigate. And there was no meaningful overlap between the work necessary for Goldstein to prevail on Count Three and that expended on Counts One and Two. Although the claims all arose from Goldstein's membership (or former membership) in a union, Count Three challenges errant nominal dues deductions after Goldstein resigned from his union, whereas Counts One and Two pursued complex theories of expressive

10

With the adjusted hourly rates of $400 and $300 for McGrath and Susanj, respectively, the lodestar is recalculated as $20,970.[5]

The City next makes several arguments relating to the hours expended on this case.[6] In the Court's assessment, two—relating to the extent of Goldstein's overall success in the litigation and the fact that the work on his behalf was intertwined with that of other plaintiffs who do not seek fee awards—warrant a substantial reduction from Goldstein's fee request.

***Extent of Goldstein's overall success***: "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005); and *Pino v. Locascio*, 101 F.3d 235, 237–38 (2d Cir. 1996)); *see also Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532 (PAE) (RWL), 2022 WL 2788655, at *13 (S.D.N.Y. July 15, 2022).

Here, Goldstein's offer of judgment pertained only to a small corner of this litigation. Under Rule 68, a party may serve an offer of judgment on "specified terms," Fed. R. Civ. P. 68, which are construed under ordinary principles of contract law. *Foster v. Kings Park Cent. Sch. Dist.*, 174 F.R.D. 19, 24 (E.D.N.Y. June 28, 1997); *see also Tucker v. City of New York*, 704 F. Supp. 2d 347, 350 (S.D.N.Y. 2010). The Rule 68 offer of judgment from the City here gave Goldstein $233.35, "plus reasonable attorneys' fees, expenses, and costs accrued to date, for all claims that have been, or could have been asserted in the [C]omplaint" *against the City*. Dkt. 78

---

[5] This figure accounts for proportional decreases in the "half" hourly rates applied to travel time. At the same time, it adjusts Goldstein's consented reduction for fees incurred after April 22, 2022, in light of the *decreased* hourly rates for each of McGrath and Susanj.

[6] As explained, some of the City's arguments have been mooted by Goldstein's concessions in its reply brief. *See supra* note 3. The Court therefore does not address these here.

and associational rights within a First Amendment framework and challenged longstanding case authority governing the First Amendment rights of public-employee union members. There is, therefore, no basis for a fee award that would compensate Goldstein for his lawyers' work on the analytically distinct Counts One and Two. "Where . . . unsuccessful claims [a]re based on different facts and different legal theories and thus b[ear] no relation to the grant of relief, the prevailing party generally is not entitled to compensation for work on the unsuccessful claims." *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (internal quotation omitted). "Given Goldstein's modest success" on his claims, "it would be unreasonable to award the amount requested here." *Bonner v. Guccione*, No. 94 Civ. 7735 (DLC), 2000 WL 12152, at *3 (S.D.N.Y. Jan. 6, 2000).

As to the scale of the reduction attributable to the minor role played by Count Three in this litigation, the Court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation" to determine the proper award. *Vogelmann v. Comm'r of Soc. Sec.*, No. 15 Civ. 8717 (PGG) (KNF), 2021 WL 6127077, at *2 (S.D.N.Y. Dec. 28, 2021) (internal quotation marks omitted) (quoting *Seigal v. Merrick*, 619 F.2d 160, 164 n.8 (2d Cir. 1980)). Nor should "[a] request for attorney's fees . . . result in a second major litigation." *Hensley*, 461 U.S. at 437. There was no freestanding litigation (for example, motions practice) directed to Goldstein's claims on Count Three. And Goldstein's attorneys' fees' records do not permit the Court to isolate work specific to Count Three. *See Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc. Marquis Mills, Int'l, Inc.*, No. 15 Civ. 10154 (PAE) (SDA), 2023 WL 3815276, at *12 (S.D.N.Y. June 5, 2023). The Court instead—considering this case's procedural history, facts, and the minor degree of Goldstein's overall success in this litigation, *see De Los Santos v. Just Wood Furniture, Inc.*, No. 05 Civ. 9369 (WWE), 2010 WL 445886, at *2 (S.D.N.Y. Feb. 2, 2010) (the "quantity and quality of relief obtained, compared to what plaintiff

11

sought to achieve . . . are key factors in determining the degree of success achieved" (internal quotation omitted))—has estimated the appropriate reduction in the fee award to reflect the limited role played by Count Three. The Court will reduce the lodestar by 70%.[7] *See Betancourt v. Giuliani*, 325 F. Supp. 2d 330, 334–35 (S.D.N.Y. 2004) (applying a 90% reduction where the plaintiff had "achieved virtually no success" and counsel "must have spent a nominal amount of time" on the one successful claim); *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 662 (S.D.N.Y. 2019) (imposing 70% reduction in fees for one attorney and 66% reduction in fees of other two attorneys where only some plaintiffs prevailed, and prevailing plaintiffs won on only small subset of claims); *Est. of Heiser v. Bank of Baroda, N.Y. Branch*, No. 11 Civ. 01602 (LGS), 2013 WL 4780061, at *5 (S.D.N.Y. July 17, 2013) (imposing 70% across-the-board reduction in fees); *Andert v. Allied Interstate, LLC*, No. 12 Civ. 7010 (PAC), 2013 WL 3833077, at *4 (S.D.N.Y. July 17, 2013) (same); *see also Guardians Ass'n of Police Dep't of N.Y. v. City of New York*, 133 F. App'x 785, 786 (2d Cir. 2005) (affirming 80% across-the-board reduction as "within the range of the broad discretion committed to the district court").

***Intertwining of Count Three work for Goldstein with that for other plaintiffs***: The City separately argues that Goldstein is seeking a fee recovery based on time his counsel expended on Count Three work for the five other plaintiffs who brought this suit alongside him. Opp. at 7.

---

[7] Plaintiff's across-the-board reduction of 10% to "account for any duplicative work, as well as the presence of multiple claims and multiple plaintiffs in this litigation," Mem. at 11, does not counsel a reduction by the Court of below 70%. The Court's decision to limit to 70% its deduction to reflect Goldstein's unsuccessful claims was generous to Goldstein; the Court elected not to make a bigger reduction in part because Goldstein had self-pruned his bills by 10%. And the 10% reduction Goldstein made reflected considerations other than the existence of other claims and plaintiffs, including, for example, duplicative work and other inefficiencies. *See, e.g., Signature Fin. LLC v. Neighbors Glob. Holdings, LLC*, No. 17 Civ. 6089 (JSK), 2018 WL 4043138, at *4 (S.D.N.Y. July 18, 2018); *Burr by Burr v. Sobol*, 748 F. Supp. 97, 103 (S.D.N.Y. 1990).

Goldstein counters that the legal work on behalf of all plaintiffs, even on Count Three, was intertwined. Reply at 9. Goldstein's argument would have force were the claim on which he prevailed one in which plaintiffs' fortunes inherently rose or fell together based on common facts and legal theories. But such is not the case on Count Three. It turned on the inherently plaintiff-specific question of whether, for that plaintiff, dues deductions continued to be made after the plaintiff resigned from the PSC. On Count Three, the *only* successful plaintiff was Goldstein via his offer of judgment.

Further, Goldstein's Count Three claim differed from that of the other two plaintiffs. Goldstein brought his Count Three claims against the City and PSC; the others sued numerous state defendants and PSC. *See* Dkt. 64 at 32. And Goldstein's litigation on this claim did not last as long as the other two plaintiffs' litigation. After Goldstein accepted an offer of judgment from the City, the other two plaintiffs proceeded to discovery—and went so far as to complete fact discovery—on their Count Three claims. *See* Dkt. 105 (setting fact discovery deadline of January 31, 2023); Dkt. 109 (voluntary dismissal of Count Three claims on February 14, 2023). The Court can reasonably infer that the hours plaintiffs' counsel expended on Count Three, even through the date of Goldstein's acceptance of the offer of judgment, were greater for the other two plaintiffs given that their claims were controverted. And plaintiffs' counsel's time entries do not permit the Court to parse how much of the time entries preceding Goldstein's acceptance of the offer of judgment are attributed to work on his distinct Count Three claim.

Accordingly, any fee award ought to strip away the work done by counsel on Count Three for plaintiffs other than Goldstein, as such persons "were not prevailing parties and are not entitled to any fees or costs." *Adorno*, 685 F. Supp. at 516. The Court again makes an across-the-board reduction of the lodestar to isolate the work performed in support of Goldstein on

13

associate at a major international law firm, practicing complex civil and constitutional litigation. *Id.* ¶ 4. She graduated from the University of Pennsylvania Law School, *magna cum laude* and Order of the Coif, in May 2013. *Id.* ¶ 2.

The City terms Susanj's requested hourly rate of $400 "well above the prevailing rate for an attorney with [her] experience in the District." Opp. at 7. The Court agrees. The $300 rate proposed by the City aligns more closely with that routinely awarded for the work of senior associates on uncomplicated matters. "Courts in this district . . . have found that $300 is an appropriate hourly rate for a senior associate with at least eight years' experience." *Dominguez v. 322 Rest. Corp.*, No. 14 Civ. 3643 (RA), 2019 WL 2053995, at *2 (S.D.N.Y. May 9, 2019) (cleaned up); *see Field v. Metro. Transportation Auth.*, No. 20 Civ. 928 (RA), 2021 WL 22817, at *1 (S.D.N.Y. Jan. 4, 2021) (awarding senior associate $300 an hour in section 1983 case involving claims of unlawful search and seizure, false arrest, false imprisonment, and excessive force); *Nat'l Ass'n for Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 17 Civ. 8943 (CS) (JCM), 2020 WL 7706783, at *5 (S.D.N.Y. Dec. 29, 2020) (awarding senior associates with nine and ten years of experience $300 an hour for civil rights litigation involving voting rights), *report and recommendation adopted with modifications in bench ruling by District Judge*, No. 17 Civ. 8943 (CS) (JCM) (docket entry dated March 5, 2021). That is especially true here, where, as discussed above, the case involved uncomplicated facts and a straightforward claim that entailed little more than calculating the dues deductions for periods after Goldstein's PSC resignation. *See, e.g., Dancy v. McGinley*, 141 F. Supp. 3d at 238; *cf. HomeAway.com, Inc.*, 523 F. Supp. at 598 (awarding senior associates $400 an hour "in light of the complex issues of first impression presented by [that] case"). The Court thus finds a rate of $300 per hour for the work performed by Susanj appropriate.

Count Three, as counsels' time entries do not permit a distinct tabulation of that work. The Court will treat the work distinct to Goldstein—as one of three Count Three plaintiffs, *see* Complaint ¶¶ 108–18—as representing one-sixth of counsel's work on that claim. That is because Goldstein was one of three plaintiffs, and because, relative to the other two, less work was likely expended on his claims given the prompt settlement of—and absence of dispute over or discovery on—his Count Three claim. The Court accordingly treats Goldstein's share of attorney time spent on Count Three as 1/6, and reduces the lodestar by another 25%.

The award that results—considering the reductions that have been made of 70% and 25% respectively—thus will represent 5% of the requested award, accounting for the proper rates awarded to McGrath and Susanj.[8] The fee award is thus $1,048.50—5% of $20,970.

## B.     The Amount of the Reasonable Cost Award

An award of costs normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients. *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Recoverable disbursements include such items as legal research, photocopying, postage, transportation, and filing fees. *See, e.g., Best Brands Consumer Prod., Inc. v. Versace 19.69 Abbigliamento Sportivo S.R.L.*, No. 17 Civ. 4593 (VSB) (SDA), 2020 WL 8678085, at *11 (S.D.N.Y. Oct. 1, 2020) (awarding filing fees, postage, local transportation costs, and FedEx costs); *Venus by Maria Tash, Inc. v. Prinatriam Ltd.*, No. 21 Civ. 2098 (LGS) (RWL), 2022 WL 4085747, at *8 (S.D.N.Y. Aug. 24, 2022)

---

[8] The City separately challenges plaintiff's counsels' fee entries as vague. *See* Opp. at 18–20. Insofar as these entries fail to isolate individualized work performed for particular plaintiffs, the Court's across-the-board reduction of hours worked on Count Three has reflected the validity of that critique. The Court does not perceive a separate basis to reduce the fee award on account of vague billing entries. *See N.Y. State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

(awarding costs for service, delivery other than for service, and research); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (awarding costs for photocopies, filing fees, court reporter fees, Westlaw research, postage, faxes, and transportation).

Routine costs are normally awarded to the prevailing party. The Court awards such here. *See, e.g., River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13 Civ. 3669 (DLC), 2015 WL 3916271, at *15 (S.D.N.Y. June 25, 2015); *Finch v. N.Y. State Off. of Children & Family Servs.*, 861 F. Supp. 2d 145, 157 (S.D.N.Y. 2012).

To the extent that the City intends to challenge plaintiff's costs on a line-item basis, *see, e.g.*, Opp. at 24–25, the Clerk of Court, and not this Court, must resolve those disputes in the first instance. Local Rule 54.1 provides:

> Within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal, unless this period is extended by the Court for good cause shown, any party seeking to recover costs shall file with the Clerk a notice of taxation of costs by Electronic Case Filing. . . . A party objecting to any cost item shall serve objections by Electronic Case Filing. . . . The Clerk will proceed to tax costs at the time scheduled and allow such items as are properly taxable.

Accordingly, plaintiff is directed to present a bill of costs to the Clerk within 30 days of the final disposition of the pending Second Circuit appeal by Goldstein. After the Clerk awards costs, the parties will have seven days to appeal that award to this Court. Fed. R. Civ. P. 54(1)(d). For the time being, the Court does not reach the merits of the City's objections to the tabulation of costs presented by plaintiff. *See, e.g., Focus*, 2023 WL 3815276, at *14. For the benefit of those engaged in the tabulation process, the Court emphasizes, however, that—given the limited context in which plaintiffs prevailed in this litigation, on the Count Three claim by Goldstein against the City—the only compensable costs here are those incurred in the service of that claim.

## CONCLUSION

For the foregoing reasons, the Court grants $1,048.50 in attorneys' fees, as well as costs. Plaintiff shall file a bill of costs with the Clerk of Court as directed by Local Rule 54.1.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 5, 2023
New York, New York